IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Duane O'Neal,

      Plaintiff,                                          Case No: 2:15-cv-881

      v.                                                 Judge Graham

HSBC Finance Corp.,

      Defendant.

<u>Opinion and Order</u>

Plaintiff Duane O'Neal brings this action under the Ohio Retail Installment Sales Act ("RISA") and the Ohio Uniform Commercial Code ("UCC") against defendant HSBC Finance Corporation.  This matter is before the court on HSBC's motion to dismiss, which the court grants for the reasons set forth below.

**I.    Background**

The following facts are undisputed.  In October 2004, O'Neal executed a Retail Installment Sale Contract to purchase an automobile from Toyota West in Columbus, Ohio.  The Contract was then assigned to Household Automotive Finance Corporation, a predecessor of HSBC.

O'Neal defaulted on payment and HSBC repossessed the vehicle on December 27, 2008. On December 31, 2008, HSBC sent O'Neal a "Notice of Right to Reinstate and Notice of Right to Redeem" (the "Notice of Rights").  This Notice of Rights informed O'Neal of his right to reinstate the credit agreement within twenty days and regain possession of the vehicle.  It contained an itemization of the reinstatement amount ($2975.21), which included past due payments ($2366.28), late fees ($78.93), repossession costs ($350.00) and storage fees ($180.00).  The Notice further advised that, as to the repossession and storage fees, O'Neal could exercise his right of reinstatement by paying just $25 of those amounts and that the remainder would be added to the balance of the credit agreement.  The Notice of Rights also informed O'Neal of his right to redeem the vehicle, even after the twenty day reinstatement period, by the paying the total amount due under the credit agreement to HSBC before it sold the car.

On February 10, 2009, HSBC sent O'Neal a "Notice of our Plan to Sell Property" (the "Notice of Sale").  This Notice of Sale informed O'Neal that the vehicle would be sold on February

1

24, 2009 at the Columbus Fair Auto Auction in Columbus, Ohio.  It advised him that he could attend the sale and bring bidders.  It also stated that he could redeem the vehicle prior to sale by paying the full amount owed.  The Notice, however, contained a sentence in which the February 24 auction was referred to as a "private sale," a reference which forms the basis of some of plaintiff's claims.

On February 27, 2009, HSBC sent O'Neal a notice that the vehicle had been sold at public auction.  The notice provided a calculation of the deficiency balance after the proceeds of the sale were deducted from the loan balance.

In 2010 HSBC sold the debt relating to O'Neal's credit agreement to Santander Consumer USA, Inc.  Santander in turn sold the debt to Main Street Acquisition Corporation in 2011.

On April 23, 2013 Main Street filed a deficiency action against O'Neal in the Court of Common Pleas for Franklin County, Ohio.  Along with his answer and counterclaim, O'Neal filed a third party complaint against HSBC on July 8, 2013.  He amended his third party complaint on September 20, 2013.  O'Neal asserted three claims in his amended third party complaint.  He claimed that the Notice of Rights violated RISA because it showed that O'Neal was obliged to pay repossession and storage fees in excess of $25.  He next claimed that HSBC violated RISA by not sending him a Notice of Sale.  Finally, he claimed that HSBC violated the UCC by not sending him a Notice of Sale.

HSBS moved for summary judgment, arguing that discovery had shown that HSBC did in fact send a Notice of Sale to O'Neal.  HSBC further argued that the Notice of Rights complied with RISA because it disclosed the full amount of its repossession and storage fees and also advised him that he could pay just $25 of those fees and still exercise his right of reinstatement.

The state court granted summary judgment on the claims relating to the Notice of Sale.  It found that HSBC demonstrated beyond dispute that it had timely sent the Notice of Sale to O'Neal via certified mail to his last known address.  As to the Notice of Rights, the state court found that the content of the Notice complied with RISA:

> . . . O'Neal argues the Notice to Redeem is defective because it provides O'Neal with two sums [the repossession costs and storage fees] when it should have simply stated O'Neal needed to pay only $25 to obtain the car.
>
> O'Neal's interpretation of R.C. § 1317.12's requirement is misguided.  [That section] mandates HSBC to itemize the amount O'Neal is required to pay to cure the default.  If the Notice to Redeem only informed O'Neal that he had to pay $25 to secure the car, as O'Neal urges, it would not have comported with the statute's plain requirement to inform O'Neal of the total amount due to cure the default.

Jan. 28, 2015 State Court Order at 10-11.  However, the court found that a genuine issue of material fact existed regarding the amount of the actual costs incurred by HSBC to repossess and store the car, and it denied summary judgment on the RISA claim relating to the Notice of Rights.

O'Neal filed a voluntary dismissal without prejudice of his remaining claim against HSBC on March 6, 2015.  Main Street and O'Neal voluntarily dismissed with prejudice the claims between them on the same day.

On March 11, 2015 O'Neal filed this action in federal court.  He asserts three claims.  His first claim alleges that the Notice of Rights violates RISA because it showed that O'Neal was obliged to pay repossession and storage fees in excess of $25.  His second claim alleges that the Notice of Sale violates RISA, which requires the sale of collateral by a secured party to be by public sale, because the Notice referred to a "private sale."  Finally, he alleges that the Notice of Sale violates the UCC because it misleadingly referred to both a private sale and an auction.

## II.     Motion to Dismiss Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").  The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3.  Thus, "a court considering a motion to dismiss can choose to begin

by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim.  Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555-56.  This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.    Discussion**

    **A.    Statute of Limitations Bars the Notice of Sale Claims**

HSBC and O'Neal disagree on whether the applicable limitations period is one year or six years.  HSBC argues that because the complaint seeks statutory damages as a remedy for the alleged RISA and UCC violations, his claims are subject to the one-year statute of limitations governing actions upon a statute for penalty or forfeiture.  See O.R.C. § 2305.11(A); Kruse v. Voyager Ins. Cos., 72 Ohio St. 3d 192, 648 N.E.2d 814 (1995).  O'Neal contends that the remedies he seeks are broader than statutory damages and include declaratory relief and an order requiring HSBC to repurchase the alleged deficiency amount.  As such, he argues, the claims are subject to a six-year statute of limitations for actions upon a liability created by statute other than penalty or forfeiture. See O.R.C. § 2305.07; Rosette v. Countrywide Home Loans, Inc., 105 Ohio St. 3d 296, 825 N.E.2d 599 (2005).

The court concludes that this issue need not be resolved because the federal complaint was filed on March 11, 2015, more than six years after HSBC sent the February 10, 2009 Notice of Sale. As both parties recognize, the viability of O'Neal's claims relating to the Notice of Sale depends on

4

whether the Ohio savings statute operates to give O'Neal a one year period from the dismissal of his state court complaint in which to file a second action.

>Under the savings statute,
>
>>In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff . . . may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. This division applies to any claim asserted in any pleading by a defendant.

O.R.C. § 2305.19(A).

The Ohio Supreme Court has held that "[t]he savings statute applies when the original suit and the new action are substantially the same." Children's Hosp. v. Ohio Dep't of Public Welfare, 69 Ohio St.2d 523, 433 N.E.2d 187, 188 (1982). Whether the original complaint and new complaint are "substantially the same" depends more on whether they are "based upon the same factual occurrences" than whether they assert the same legal theories. See Stone v. N. Star Steel Co., 152 Ohio App.3d 29, 786 N.E.2d 508, 512 (Ohio Ct. App. 2003) (citing cases); Am. Premier Underwriters Inc. v. Gen. Elec. Co., 900 F. Supp. 2d 753, 758 (S.D. Ohio 2012). This emphasis on the similarity of the factual allegations ensures that the savings statute is reserved for instances in which the defending party in the new action has already been put on fair notice of the allegations being asserted against it. Id. (citing Lanthorn v. Cincinnati Ins. Co., No. 02CA743, 2002 WL 31768796 at *4 (Ohio Ct. App. Dec. 5, 2002)). The savings statute thus is not applicable where the two actions involve different underlying sources of liability. Id. at 759 (holding that savings statute did not apply because prior action arose from the contamination of one site, while second action arose from the contamination of additional sites).

The court concludes that O'Neal's present claims relating to the Notice of Sale are not substantially similar to the claims he asserted in the third party complaint in state court. In state court, O'Neal alleged that statutory violations occurred because HSBC had failed altogether to send him a Notice of Sale. Here, he alleges the opposite fact – that HSBC did send him a Notice of Sale – and liability arises from the alleged content of the Notice rather than from an alleged procedural failure by HSBC to properly or timely send the Notice. As HSBC correctly observes, the allegations of the third party complaint are factually irreconcilable with the allegations here. The present complaint thus alleges new facts and reconfigures the RISA and UCC claims in a way that HSBC could not have reasonably anticipated from the third party complaint. See Lum v. Mercedes Benz

5

USA, L.L.C., No. 3:05CV7191, 2006 WL 1174228 at *3 (N.D. Ohio Apr. 28, 2006) ("Because plaintiffs had to allege new facts – flagrant disregard for safety – to present a claim for punitive damages, their refiled complaint is, as Ohio law uses the term 'substantially the same,' not substantially the same as their original complaint. Their demand for punitive damages did not simply reformulate their lawsuit: it reconfigured it in a way that could not have been anticipated from a reading of their original complaint. Ohio's savings statute does not, therefore, operate to allow plaintiffs to seek punitive damages, because the plaintiffs first asserted that new claim for additional relief, and its underlying factual basis, after the statute of limitations had expired.").

Accordingly, O'Neal's claims as to the Notice of Sale are time-barred.

### B. Failure to State a Claim as to the Notice of Rights

The Ohio savings statute does save O'Neal's claim that the Notice of Rights violates RISA. He alleges that a violation occurred because the Notice showed that he was obliged to pay repossession and storage fees in excess of $25. O'Neal asserted this exact claim and these same allegations in state court prior to voluntarily dismissing the claim.

The state court went so far as to conclude that HSBC had not violated RISA in the manner in which it disclosed the repossession and storage fees in the Notice.[1] But the state court found that a genuine dispute existed over whether HSBC had accurately stated the amount of its actual costs.

Under RISA the secured party must, within five business days after taking possession of collateral, "send to the debtor a notice setting forth specifically the circumstances constituting the default and the amount by itemization that the debtor is required to pay to cure the default." O.R.C. § 1317.12. RISA further provides that a debtor may cure the default by delivering all due and past due installments, any unpaid delinquency charges and the "actual and reasonable expenses incurred by the secured party in retaking possession of the collateral provided that any portion of such expenses which exceeds twenty-five dollars need not be delivered to the secured party pursuant to this division, but shall be added to the time balance." Id.

As HSBC argues and the state court found, the Notice of Rights sent to O'Neal plainly disclosed and itemized the expenses incurred by HSBC in repossessing of the car. Moreover, the

---

[1] HSBC does not argue that the state court's holding has preclusive effect. In order to bar relitigation of an issue under the issue preclusion doctrine, there must be a final judgment on the merits in the previous case. Cashelmara Villas Ltd. P'ship v. DiBenedetto, 87 Ohio App. 3d 809, 813, 623 N.E.2d 213, 215 (Ohio Ct. App. 1993) (citing Goodson v. McDonough Power Equip., Inc., 2 Ohio St.3d 193, 443 N.E.2d 978 (1983)).

6

Notice correctly informed O'Neal that, in order to exercise his right of reinstatement, he needed to pay only $25 of those particular expenses, with the remainder to be added to the loan balance.

O'Neal's argument to the contrary is at best "misguided" (as the state court put it) and, if accepted, would undermine the protective purposes of the statute. O'Neal's novel theory, for which he cites no applicable legal support, is that a notice sent under O.R.C. § 1317.12 should not disclose the existence of any repossession-related expenses beyond $25, because $25 is all that a debtor needs to pay in order to reinstate an installment sale agreement. But such a limited disclosure would itself violate the plain language of the statute, which requires an itemization of the actual expenses incurred by the secured party in repossessing the collateral. And such a limited disclosure would keep hidden from the debtor the true amount of his total debt, leaving him without this critical piece of information as he evaluates his options for exercising his rights to reinstate and redeem. In other words, O'Neal interprets § 1317.12, a disclosure provision, to require secured parties to conceal their repossession-related expenses above $25. Such an interpretation must be rejected.

This leaves O'Neal's alternative claim that HSBC violated § 1317.12 because the Notice inflated HSBC's actual repossession-related expenses. O'Neal contends that HSBC's actual storage fees were $0 ($180 was shown in the Notice of Rights), as evidenced by the calculation worksheet contained in the February 27, 2009 notice sent to him after the auction. He further contends that HSBC's actual cost to repossess the car was $325 ($350 was shown in the Notice of Rights), as evidenced by an invoice issued by the repossession firm.

The state court found that there was a triable issue as to the actual fees incurred by HSBC in repossessing the vehicle. HSBC now presents a meritorious argument that the state court apparently did not have the benefit of considering, at least not as it related to third party defendant HSBC. HSBC argues that § 1317.12 provides only a defense to debtors and does not authorize an affirmative cause of action by which O'Neal can assert a claim for damages against HSBC.

The court agrees. RISA provides for a single remedy when a secured party fails to comply with § 1317.12's notice provisions: the secured party "may not recover the costs of retaking possession of the collateral and is not entitled to a deficiency judgment." O.R.C. § 1317.12; see In re Dawson, No. 05-1463, 2006 WL 2372821 at *14 (Bankr. N.D. Ohio Aug. 15, 2006), *aff'd sub nom.* Dawson v. J & B Detail, L.L.C., No. 106CV1949, 2006 WL 3827459 (N.D. Ohio Dec. 27, 2006) ("[E]ven if the RISA requirements were applicable, it is not clear how Dawson would recover for these violations under the RISA. The only remedy provided for under the RISA is denial of a deficiency balance for collateral sold at a public sale.").

Section 1317.12 thus provides a defense to debtors in deficiency actions, and O'Neal had a viable legal defense against Main Street in the state court action. But in this action, § 1317.12 offers no basis upon which he can recover statutory damages against HSBC.

Finally, O'Neal lacks standing to seek declaratory relief against HSBC under RISA. Simply put, HSBC sold the debt many years ago and there is no realistic threat that HSBC will initiate a deficiency action, attempt to collect on the debt or otherwise enforce the debt against O'Neal. See Blakely v. United States, 276 F.3d 853, 872-73 (6th Cir. 2002) (before granting declaratory relief, the court must find that "'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy [and] reality to warrant the issuance of a declaratory judgment'") (citing Golden v. Zwickler, 394 U.S. 103, 108 (1969)).

## IV. Conclusion

Accordingly, HSBC's motion to dismiss (doc. 15) is granted, HSBC's motion to take judicial notice (doc. 20) is granted, and this action is hereby dismissed in its entirety.

                                                                                                s/ James L. Graham
                                                                                                JAMES L. GRAHAM
                                                                                                United States District Judge

DATE: September 6, 2016